The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit are admonished to draw a nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. Be seated. Welcome to the 4th Circuit. Panel of the day, Judge Benjamin, Senior Judge Keenan, and myself. We're prepared to hear arguments in three cases today. We're going to start with the Williams O'Holly Ohio Valley Means Mainstream, Midstream v. Kittle. We're here from the Appellate's Council. Thank you, Your Honor. May it please the court, my represent Defendant Appellants Phillip and Deborah Kittle. This is a case about protecting landowners' property rights and the district court's failure to apply the party's contract as written. In granting preliminary injunctive relief, the district court entirely disregarded well-settled fundamental contract principles and impermissibly broadened the scope of the grant. The language of the 2010 pipeline right-of-way agreement is unequivocal. The agreement explicitly provides that the second easement, quote, is specifically is granted specifically for the purpose of connecting future wells or wells that may be drilled on ranchers' property. We have a case in which there's no question there are two easements here and sounds like everybody's been getting along for well. Then ultimately something needs to be done with the first one where there's been a couple of pipes put in. Make sure I'm not oversimplifying this but I'm trying to break it down so it's kind of simple for us as to what your dispute is. And then a decision is made that something has to be done to the first one and Williams Ohio wants to excavate whatever's on that first one and put it on the second one and your client didn't like that. Is that oversimplifying it? In not so many words correct, your honor. Because you say the contract doesn't allow them to do it. Correct and later on in the contract it explicitly preserves the Kittles right to continue their farming operations if the easements are not in use, which is what they were doing. So to come on later and force a use that was not permitted by the contract to hinder their farming operations. What is the current status of the soil? Is the soil in the area of what you contend to be the second and separate easement? The status of the soil and second easement? I'm asking what the soil that's at issue here that was said is the second easement. Is the soil still there? My understanding the last I checked with our clients though they began removing the soil there is still other debris and contaminants in the silt fence in that second easement. So that's your problem? I understood they put the soil there and they said well that's where Judge Tina's going with this. They said okay we can do this another way. We put the soil over here on the first one and we don't have to use a second one. And is it the little bit that's left up there now that's bothering you? They began using the second easement after the preliminary injunction order and what has happened is Williams rather than abide by the party's contract, Williams Ohio began a curative workaround to put the soil in another area and then later sued the Kittles now for damages for that workaround in the amount of about $250,000 and impermissibly using preliminary injunctive relief to force an unprevented use on the Kittles property. Our position is that type of equitable relief is not allowed. Equity must follow the law and a preliminary injunction cannot create new substantive rights. Second, and as we stated as the agreement makes clear that the second easement is for a specifically enumerated purpose. Fundamental principles of contract law state that when a when one thing is expressly stated that inherently forecloses any other use. So here specifically enumerating the purpose of the second easement for additional drilling of wells inherently forecloses any other permissible use. There are no additional wells drilled on the property. There are no connected well connect lines on that second easement. These facts are not in dispute. Probably your strongest point. They got the general language in this contract first paragraph and then you have that specific one says this easement is granted specifically for the purpose. You hammered on that. You know your opponents have differentiated that and they're going to be asked about it because if it's that simple then it's a simple case because that creates at least an ambiguity in the contract which means what? That means if we send it back what happens? Our position was if you read the agreement also states two easements and enumerates are different purposes. Let's assume we don't go that far and say there's no ambiguity. That's kind of the trial court's job but if we say all you need is ambiguity to get it back to the trial court. You get back to trial court then then I would think you might be entitled to bring in extrinsic evidence of that. Is that correct? Correct your honor and at the preliminary injunction hearing that was our position. The Kittle both Philip and Deborah Kittle were present to provide testimony but the court refused that testimony. Well let me ask you this because in your in your briefs is your argument that the contract is not ambiguous and I think you there's this argument in there that the court made it ambiguous which I don't think that the court can do that but so is it your position that it is or is not? Reading the agreement in its entirety it should not be ambiguous. The two two easements is stated multiple times with parentheticals numerical to multiple times that repeated language separate separating the two easements with different purposes is intentional. However what the court's order stated was the title of the agreement pipeline right-of-way means that there is a single right-of-way. Though basic principles of contract law state a title or a caption cannot be used to create ambiguity with the text of the document which was done here. This is clear within under West Virginia law and the Supreme Court has explained the same. The United States Supreme Court explained the same. That's where we found if you were to read the contract as ambiguous because of the title that is impermissible but if that is what the court's finding is we did offer a presentation of evidence and testimony to offer extrinsic evidence of the party's intent and what they meant by the negotiated contract language. Do you agree that the if your position is that it's not ambiguous or it's unambiguous then the court does not need to consider the extrinsic evidence it would have to be some type of ambiguity for the court to consider your extrinsic evidence is that correct? Right if the court if there is another reading other than the grant that I stated earlier the specific grant for this specific purpose if ambiguity was read into that would be the only time that extrinsic evidence would be allowed but because that is what the court in the discussion during the preliminary injunction hearing was and that is what the court found we did offer extrinsic evidence and presentation of evidence and testimony by the Kittles. We were ready and present to prepare testimony as to also extrinsic evidence of the party's prior transactions that prior to this preliminary injunction hearing on Williams Ohio did approach the Kittles for temporary workspace which implies that they did understand that they did not have the contractual right to use this space for their temporary workspace that is the type of extrinsic evidence that we believe would should have been allowed at the preliminary injunction hearing and was offered at the hearing but the court had refused. Again it is also well accepted law that the drastic remedy of a preliminary injunction requires an evidentiary hearing and a notice an opportunity to be heard. This was not done at the preliminary injunction hearing there was no presentation of evidence there were only arguments by counsel. Moreover after the preliminary injunction hearing the court permitted Williams to retroactively amend their complaint and prepare a findings of fact and conclusion of law that mirrored their new pleadings in their complaint. The court then adopted those findings of fact and granted the preliminary injunction although the Kittles were not allowed to present rebuttal testimony or evidence. This clearly contradicts the notice and hearing requirements of Rule 65. That is another basis for the impropriety of the district courts preliminary injunction order. Lastly the district court also entirely waived their required bond requirement. As is well accepted this bond requirement of Rule 65 C is mandatory. The court cannot just not address it at all which is what was done in the preliminary injunction order. The reason that the preliminary injunction order should be vacated and is reversible error. Thank you. Thank you. You have a few minutes of rebuttal. We'll hear from you Mr. Schultz. Thank you Your Honor and good morning. My name is Michael Schultz and I represent Williams-Ohio Valley Midstream. We ask that this court affirm in its entirety the district courts order of granting plaintiffs motion for 2023. It started out as a preliminary injunction or TRO? It started out your honor as a temporary restraining order because look it very simply because a TRO can be entered immediately without notice to the other side without giving the other side a chance to present evidence and be present and by the time we got a hearing after filing both the verified complaint and the motion for a temporary restraining order and if you look at the timing your honor before the district court the verified complaint was filed on a Friday September 29th 2023 after 5 p.m. Under the PACER system it's not accepted until the following Monday October 2nd. Answer Judge Keenan's question about what's been done. Looks like to me you sold over to the first one and what was that about I mean what's going on what's what's the problem here now? I can tell you exactly what's going on your honor and that was a question I was going to get to Judge Keenan. What happened was that before the Kittles blocked access to the part of the right-of-way known as the second easement Williams was able to excavate and move soil for exactly one day. So there is one day's worth of soil from the excavated pipeline on the first easement that had been moved to the second easement. After that access was blocked no more soil was moved there but because of the blockage of the access Williams asked in part for the access to be removed where the blockage to be to prevent soil erosion off of the right-of-way. What's the current state? Right now Williams is backfilling where it had excavated the soil from the first pipeline from the first easement. Is there any soil now in that second easement area? My understanding is that that soil that one day's worth of soil has now been removed and has been part of what has been backfilled into the pipeline on the first easement. As of last week Williams estimated it was about three more weeks before the pipeline in the first easement was going to be completely backfilled after which they would level reclaim and recede. What is the evidence in the record of a threat to the first pipeline at the time the court issued the preliminary injunction? The undisputed evidence in the record Your Honor is that there was an underground longwall mining operation that was approaching the Kittle property. Right but what was the evidence of irreparable harm? I mean was there just an assumption? No Your Honor. Something could go wrong? No Your Honor. Okay what's the evidence in the record that would support the finding of irreparable harm? The evidence that was in the record was the verified facts in the verified complaint and those verified which is verified by the director of the project of Williams Mr. Roberts. Mr. Roberts is the individual at Williams who is in charge of keeping track of longwall mining operations up in the northern panhandle of West Virginia figuring out where they're going to go and then determining what needs to be done to mitigate and that are in the path of that longwall mining operation. All those are verified facts in the complaint. Right but there has to be, there had to have been some discussion and I couldn't find it or some consideration of the fact there were a lot of workarounds. You didn't have to put the soil on that area of the Second Eastman. I mean there's other land that you could have used right? Your point and the most important point is is what Williams was asking for and was what Williams doing consistent with its property rights under the right-of-way agreement. Yeah I don't I don't see though Mr. Schultz how you get a single right-of-way here. Your Honor. It's because you have not only the designation of two but you also state the purpose of the Second Eastman. The purpose being for future wells drilled on the property and this would be for the Kittles benefit. This is not for the benefit, the language of the Eastman doesn't suggest in the body of the right-of-way rather than just the title. So there's nothing that suggests that that Second Eastman is for the benefit of Williams or if you could point me to the language in it that does suggest that it's for the benefit of Williams. Certainly Your Honor. First of all you look at the first paragraph of the right-of-way agreement which is the granting language and the granting language allows Williams to enter the Kittles property on the right-of-way to quote lay, operate, maintain, repair, replace and remove pipelines. That's the right-of-way. Now in the facilities section on that same first page of the right-of-way agreement that's where this notion comes up of two separate distinct independent rights-of-way. But the facilities section makes it clear that the facilities simply limits what types of pipelines and other equipment can be placed on the area of the right-of-way known as the Second Eastman. But the language says the Second Eastman in the facility section, the Second Eastman being for the future installation of two additional pipelines of undetermined diameter. Absolutely agree with that Your Honor and in fact to be granted specifically for the purpose of connecting future well or property. Absolutely correct Your Honor. I agree with all of that language and Williams has and intends to follow that exact language. There are two pipelines there. The statement deals with the first and you say that's the granting paragraph. Correct. The word granting is used right there in the facility which is granted specifically. It specifically indicates what that grant is. I mean if it is specifically used, different. But it says granted which is the same thing you got you say is a differentiation with the first paragraph is that grants the rights. As Keenan's point is it granted specifically that. Well in the granted paragraph says two permanent rights-of-way and Eastman's. Even the granting language refers to two Eastman's. Your Honor I will concede that the consistent but that's why. But you're hanging your hat on the granting language and I'd like you to address the granting language portion that talks about two permanent rights-of-way and Eastman's. With all due respect Your Honor I'm hanging my hat on the entirety of the agreement. What you concede is not altogether consistent. You mean is ambiguous? No Your Honor. I don't believe it's. When something is inconsistent it seems like to me that's not very clear. That sounds like an ambiguity to me. Your Honor. You conceded it. You just said it. I concede it is not altogether consistent. Inconsistent language does not necessarily mean legally unclear or ambiguous. And in fact nobody is claiming that this contract is ambiguous. But if you look at the entirety of the agreement, which the District Court did, you will see that throughout, replete throughout this agreement, there is reference to a single right-of-way. Singular, small. You review the contract under an abusive discretion standard because the court looked at the contract in the context of is there, is Williams likely to succeed on its breach of contract claim at trial, which is of course the first element for issuance of a preliminary injunction. And that is a an abusive discretion. And I would submit that the District Court not only did not abuse its discretion, but got it right. Because if you look throughout the agreement, for instance, the description of the right-of-way, this is the with the, both parties says there's no ambiguity. District Court says no ambiguity. We read the contract and we see an ambiguity. What do you think happens? I think that this court has to look ... The word abusive discretion comes up, doesn't it? That's the case. The term ... So the point being is we're reading this contract and we're telling you right now it looks like there's an ambiguity. You conceded there's an inconsistency within it. And you got two different sections. If there's an ambiguity, it's not the end of the world for you. It just says you can't end it at this stage. You know, you may need some extrinsic evidence or whatever to bring it in, which was not allowed in this case. Because there was no ambiguity. And the Kittles admit there's no ambiguity. If we determine there is such an ambiguity, what is the outcome of this case today? If this court determines there's an ambiguity, then it's certainly within the purview of this court to remand with instructions to the district court to accept extrinsic evidence in order to resolve that ambiguity. Williams, of course, and the Kittles, and the district court found no ambiguity. Understood. And they have the right to find it. But you're in the full circuit right now. The question is, we'll look at this contract. You have three judges up here. If we make that determination, I'm just saying if. I'm not saying we will. I'm just trying to make sure we're on the same ground so you don't just rest that you say it's not ambiguous, so you're not going to talk about this contract. I'm saying talk about the contract in the light we're giving it to you, not no one found it to be ambiguous. Correct. Because I believe, Your Honor, as the district court did, if you look at the contract as a whole, without necessarily elevating one part over the other, if you look at it as a whole, as I mentioned, the description of the right-of-way, two singular right-of-way references. If you look at the right of ingress and egress, there are two references to a singular, lowercase, right-of-way. If you look at the freedom from obstructions section of the contract, there's a reference to the pipeline right-of-way. If you look at the special conditions, which is a part of the right-of-way agreement, there are five references to a singular right-of-way. Mr. Shultz, if you go there, there's the other side of this because throughout this contract there are references to two easements throughout of it. I mean, you can look through it, two permanent rights-of-way, two 30-foot-wide pipeline easements. It goes on and on. I mean, if you go, your point is well taken that that side is mentioned, but I'm letting you know there's another reference in all throughout this contract, two easements. And when it refers to the right-of-way, it then follows immediately talking about the two easements. In other words, the right-of-way granted consists of two separate easements. So, I mean, it seems to me you're asking us to look at part of the sentence and not the full sentence. No, Your Honor, I'm asking... Throughout this first page, when there is a discussion of the right-of-way, it is joined to the discussion of the two permanent easements. I just don't... I'm having trouble with this because I think, you know, when you have an abuse of discretion standard, an error of law is an abuse of discretion, and I just... I'm really struggling on both counts. First, whether there aren't two easements here, clearly, but also where is the evidence of irreparable harm? All you say is there's a verified statement of facts. There's no other evidence of irreparable harm? Your Honor... The district court just accepted those facts without asking for further evidence? No, Your Honor. In fact, irreparable harm can be found solely with the unauthorized interference in a real property right, and that's what happened here. The district court found that Williams had a property right to use the surface of the Kittles property consistent with the right-of-way granted under the right-of-way agreement, and the typically, when you have an instance like this, the district court would have an evidentiary hearing, not just take the allegations as true, whether verified or not, and here there was no evidentiary hearing. That's the point that Judge Keene is making here, and we don't have that evidence. Your Honor... Beyond the allegations that you say are verified. Not only the allegations that are verified in the complaint, Your Honor, because before this the circuit court was a 68-page response to the motion for a temporary restraining order, which included a 27-page affidavit from Mr. Kittle. So why not have an evidentiary hearing and consider this in that manner? Your Honor, the district court had decided that based on the record before, which included Mr. Kittle's affidavit, which included the written response, which included whatever argument counsel wanted to make, which understandably is not evidence, but decided on the record in front of it that it had sufficient evidence to make the findings that it did in issuing the preliminary injunction. So it's not that it had no evidence. The question is whether there was an erroneous finding of fact based upon the record in front of the court, and Williams would submit there was no erroneous finding of fact, and in fact the Kittles don't complain about any erroneous. And Judge Benjamin, sorry, didn't mean to promote you, but you mentioned about the ambiguity. The Kittles, if you notice, they want it both ways. They don't want an ambiguity until such time as the court rules in their favor, but once the court does not agree with them, then they want to say that the get alternative positions where the party will say, well, no, it's not ambiguous, but your honor, if you do find it ambiguous, etc. Yes, I mean, that sounds like they're conceding one side to the other, but it's kind of an alternate argument. Basically, they want an opportunity to go back to the court there. How you get there sometimes may not always be the same, so you've probably done that. I probably would say yeah, but I'm just guessing. But more importantly for purposes of this case, your honor, just because the Kittles and Williams disagree about what this contract says, that doesn't raise an ambiguity. That just means we disagree, because it's up to the court to rule as a matter of law whether in fact there's an ambiguity, and this court made the conclusion that there was no ambiguity when looking at the entirety of the agreement, and Williams would submit that's not an abuse of discretion when you look at the entirety of the agreement. That, of course, is probably the crucial issue, although it's only the first element of the preliminary injunction, but Williams would say that would submit that the district court did not err or abuse its discretion in finding the remaining three elements for issuance of the preliminary injunction, and I want to point out that all this was for temporary access. By the time, well, two things. Number one, this is temporary. As of last week, the Williams anticipated that it would be able to close out the permit that it received from the DEP on the erosion and sediment control permit. Once reseeding reaches 70% of vegetation over the disturbed area, and that's anticipated to happen by late summer, early spring, or early fall. Oh, you're saying it has all the markings of something that ought to be settled and worked out, but you might have some other things that are keeping you from doing it. Well, it looks like to me, at the end of the day, things are going to roll back the way they are. Correct. So, a lot of feelings are going to be hurt, that's how it went, so maybe you want something to deal with that, but who knows? It is possible you might just find some way to work this out before we issue an opinion. One never knows, your honor, but I would point out that there is a trial set in November for the Kittle's claims on trespass, breach of contract, etc. So, they're going to have their day in court, if you will. I'm only dealing with this case, a preliminary injunction. Correct, but they are going to get whatever remedy to which they're entitled, they'll be able to get it. If you have no further questions, your honor, we ask that this court affirm the order granting the preliminary injunction issued by the Northern District. Thank you, Mr. Shultz. Thank you. As Mr. Shultz mentioned, the granting language and the entirety of the agreement supports our position that there are two separate easements with specific enumerated purposes. If you look at any reference to pipeline right-of-way in the singular in the agreement upon further review, it's clear that it's referencing the title of the document. For example, it says this pipeline right-of-way replaces and supersedes prior agreements, or it references this pipeline right-of-way as the title of the agreement. In other cases, it references a singular pipeline right-of-way when it is talking about a singular, each respective singular right-of-way. For example, in the advanced damages section, it talks about advanced damages for the right-of-way in two separate paragraphs talking about the respective easements, the first easement and the second easement. So upon closer review, the singular use of right-of-way is either a reference to the title of the agreement or referencing a single, one of the single right-of-ways of the two easements. By Mr. Schultz's logic, a reference to singular pipelines in the agreement would cause ambiguity. For example, there is a clause in the contract that talks about grantee will be permitted to make markings on the pipeline. Though the contract makes clear that there are four different pipelines. So reading into by Mr. Schultz's logic, that document, that sentence also creates the ambiguity, whether there are four pipelines or one pipeline. Reading the entirety of the agreement does not support that position. That is why we believe there should, it should be read to have no ambiguity. Even if the court does find ambiguity, basic and well-accepted contract. I'm just not understanding your argument because you're arguing that it is ambiguous, but then you're coming back and saying, no, it's not. And I think that's what you did during, at least in your briefing, and it appears below that you were making an argument before the district court that it was not ambiguous, but you wanted the district court to use extrinsic evidence when it's very clear that the only way that the district court is going to use extrinsic evidence is if it's ambiguous. So I'm not, I'm not, I'm not quite sure where you're going. I don't know what your position is. Is it ambiguous or is it not? Because what you just argued a second ago seems as if that's what you're saying is that it is ambiguous. Right. So according to, you know, contract rules of construction, for example, that you cannot read a title to create ambiguity within the document's text. Doing that would create an ambiguity, but initially that is not supposed to be how you construe a document according to that principle. In addition, you can't, you must construe the text of the contract without leaving any of the text mere surpluses, mere surplusage, or devoid of meaning, which was done here. If you were to ignore that statement regarding the specific purpose of the second easement, then you create ambiguity. Additionally, the specific... So is it your position that it's is clear? Okay. Is our position, especially applying different contract rules. The express mention of one thing excludes all the other uses. Applying those contract rules makes the party's intent clear. The fact that... Ms. Ligon, could I interrupt you just for a second to make sure? I think if you could structure for us and tell me if I'm wrong, I'm understanding your argument to be that this language is unambiguous. Okay. That's our primary position. However, if you disagree with this argument, our alternative position is there is sufficient ambiguity to send this back to the district court. Is that your position today? I believe so, Your Honor. To clarify, if you were to read these singular references as contradicting... Right. I'm asking you what your primary position is and what your alternative position... I think you need to clarify that because you're blending a little bit. So if you could clarify your primary position... Understood. Okay. So our primary position is the contract in its entirety is not ambiguous and expresses the clear intent and objective of the parties. However, other reasonable or other and the court is concerned about singular references to the right-of-way that create this ambiguity. At least when you look at the two positions, Mr. Schultz says it's unambiguous too. District Court said it was unambiguous in his favor. You're saying it's unambiguous in your favor. At the end of the day, when it comes to this court, if we can say, hey, yeah, both of you kind of got it. It is ambiguous for your favor, your favor, but there's an ambiguity here because we don't know who is it going for, which way it goes on it. I mean, we can talk contract law all day long on this thing, but at the end of the day, you might just be satisfied if we can say at least that this is ambiguous regarding this because you asked for, as Judge Pidgeman, extrinsic evidence. You're not getting it in on an unambiguous contract. Okay. If it's ambiguous, you get extrinsic evidence in. So you asked for it. So whether you want to now call it unambiguous, you don't ask for it if it's unambiguous. So do you have anything further you'd like to tell us today? Yes, Your Honor. In response to that, understood. Again, we state that just the reading of the contract in the entirety, the intent is unambiguous of the parties. All right. If the ambiguity is created, if there are two reasonable readings, we don't believe there is any other reasonable reading than what the intent of the parties as expressed. Your time is up and we do appreciate your argument. Oh, thank you. I'm sorry, Your Honor. The timer is still going, but I appreciate it. Thank you. That's fine. And Mr. Shultz, we appreciate it. We'll come down and greet counsel and go to the second case in the calendar.
judges: James Andrew Wynn, DeAndrea Gist Benjamin, Barbara Milano Keenan